**James M. JENKINS, Plaintiff-Respondent,**

**v.**

**Lawrence Wilson SIMMONS and Elizabeth Miller Simmons, Defendants-Appellants.**

**No. 55779.**

Supreme Court of Missouri, Division No. 1.

Nov. 8, 1971.

Thomas A. Sweeny, Kansas City, for respondent; Popham, Popham, Conway, Sweeny, & Fremont, Kansas City, of counsel.

Robert Martin, William L. Oliver, Jr., Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., James D. Veselich, Morris, King, Stamper & Bold, Kansas City, for appellants.

HOLMAN, Presiding Judge.

Plaintiff as administrator of the estate of Eleanore L. Miller, deceased, filed this suit to recover on two promissory notes allegedly signed by defendants. The note involved in the first count of the petition was dated March 19, 1956, in the principal amount of $20,000, upon which it was alleged that payments totaling $9,657 had been made leaving a balance due of $12,-204.74. The second count involved a note for $18,113 dated October 21, 1957, upon which it was alleged no payments had been made. At the conclusion of the evidence the court dismissed Count I at plaintiff's request and entered judgment for plaintiff on Count II in the sum of $18,394.92. Defendants have appealed.

Defendants' amended answer, after admitting the death of Eleanore, denies "each and every other allegation of plaintiff's petition. Defendants specifically deny execution of the promissory notes upon which suit is brought * * * and by way of affirmative defenses, defendants state

that plaintiff's cause of action is barred by the statute of limitations, and further alleges the defenses of payment, release, waiver, accord and satisfaction, and failure of consideration."

This suit arises out of certain family transactions. Involved were Eleanore, her twin sister, defendant Elizabeth Miller Simmons, their mother Della M. Miller, and Elizabeth's husband Lawrence. The facts relating to the execution of the notes were given by Amos L. Roberts, a Kansas City attorney who had formerly been with Kansas City Title Insurance Company. He testified that on March 19, 1956, Mr. and Mrs. Simmons executed a note for $20,000 payable to Eleanore in installments of $111 per month which was secured by a mortgage on certain real estate located in Wichita, Kansas; that Eleanore delivered a cashier's check for $20,000; that Elizabeth had strongly objected to giving a mortgage on her home but finally did so; that Elizabeth returned to his office in October 1957 and stated, " 'I am not going to have that mortgage on my property. * * * How am I going to get it released?' And I told her, 'Well, either go out and pay your sister the full amount of your loan or * * * if you can, prevail upon her to accept a new note in exchange for that one and the release of the mortgage.' " He further stated that on October 21, 1957, Elizabeth and Eleanore returned with the note for $18,-113 (which was agreed to be the balance due on the first note) and it was delivered to Eleanore and she signed a satisfaction of the mortgage and delivered the first note to her sister; that the second note was also payable at the rate of $111 per month and contained no provision for interest; that Mrs. Miller was the guiding hand in all the transactions.

The only defense upon which defendants offered evidence was an alleged release. It (defendants' exhibit 1) was written upon the bottom third of a sheet of stationery containing the letterhead of Harry W. Miller (the father of these twins). The upper part of the sheet contains a list of government bonds dated between January 1942 and June 1944, as well as some other apparently unrelated figures. The portion relied on as a release is as follows:

"Jan. 1960

"Liz: Neither you or Wilson owes me or your sister any money.

"Love, Mother

Eleanore."

The body of the release is typed while the words "Love, Mother" are written with a pen and "Eleanore" with a pencil.

Elizabeth was offered as a witness for defendants but because of an objection under the "Dead Man's" statute she was only permitted to testify that the words on defendants' exhibit 1, "Love, Mother," were in her mother's handwriting and the word "Eleanore" was her sister's writing. She made an offer (to which objection was sustained) to testify that "the transaction was one that she had with her mother in which, when she moved to Wichita, Kansas, and purchased a house there, that she purchased a house for $50,000; she paid $5,000 down payment; that at the insistence of her mother she borrowed the balance of $45,000; and at the time she sold her previous residence here in Kansas City, Missouri, she repaid her mother $25,000 and gave her a note—gave her a mortgage in 1956 for the balance of $20,000; and in 1957 she paid the balance that was due of something less than $20,000; she would explain that she has never borrowed any money from her sister; that her mother in this transaction and other transactions put evidences of debts that were owed by other people besides Mrs. Simmons in the name of Eleanore; that Eleanore was a handicapped person; that she was not married and lived with her mother; that she had no source of income except what her mother gave her; and that to appease Eleanore she handled these transactions in her name; that * * * prior to the time she paid the money back in 1957, she was making $111 payments, and she was making the payments to her sister;

that when she paid the money back in 1957 Eleanore was upset because she was not going to get the payments any longer and so Mrs. Simmons and her mother entered into an arrangement by which if Mrs. Simmons would continue to pay Eleanore $111 a month Mrs. Miller would give her the money to do so, so that Eleanore could keep her contact with her sister who had moved away; and that Mrs. Simmons and her mother carried out this arrangement until the time that her mother died in approximately 1963."

Bess Robertson testified that she worked for Mr. Miller from 1934 until his death in 1945 and thereafter for Mrs. Miller until 1952; that Eleanore lost the power to write during an illness and that she helped her learn to write again; that she (the witness) had written some of the bond information on defendants' exhibit 1 and that the words "Love, Mother" on that exhibit were in Mrs. Miller's handwriting and the word "Eleanore" was written by Eleanore. Similar identification of the writing of those words was given by Mildred Chambers who had worked for Mrs. Miller from 1948 until 1957.

The findings of the trial court included the following: " * * * 3. On October 21, 1957, defendants executed the promissory note in favor of Eleanore Miller, which is the subject matter of Count II. 4. There is no evidence of any payments made on said note. * * * 7. Defendants' Exhibit 1 is not a valid and binding release."

The first point briefed by defendants is that "the trial court erred in failing to find that the defendants had been released in writing from any alleged indebtedness by the deceased." It should be noted at this point that after the purported signatures to the release were identified, it was admitted in evidence. Almost the entire argument of defendants on this point is contained in the following quotation from their brief: "Once the release is admitted into evidence the burden of proving that the release is invalid shifts to the opponent of the release.

* * * The plaintiff offered no rebuttal evidence nor made any attempt to attack the validity of the release and thus, having failed to sustain the burden which had been shifted to him, the court should have granted the defendants judgment on the basis of the written release."

█ It is our view that defendants have misconceived the rule relating to the shifting of the burden of proof when a release is interposed as an affirmative defense. The burden does not shift upon the admission of the release into evidence. Release is an affirmative defense and it is a well settled general rule that the burden of proof to establish affirmative defenses is on the defendant from the beginning and remains upon him throughout the case. Gennari v. Prudential Ins. Co. of America, Mo.Sup., 335 S.W.2d 55 [2]. However, there is an exception to the general rule in regard to releases in that where the execution of a release purporting to rest on a consideration is admitted the burden is on the plaintiff to prove some invalidity in the release. Foster v. Aetna Life Ins. Co., 352 Mo. 166, 176 S.W.2d 482 [5]. In the case before us the execution of the release was not admitted and it does not purport to rest on a consideration. We accordingly rule that the burden remained on defendants throughout the case.

█ In considering the merits of the trial court's finding that the paper in question was not a valid and binding release we are mindful that in this case, which was tried before the court, "[t]he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R. When we consider the scant nature of the writing, the unusual designation of the parties and signatures involved, and the fact that the paper does not purport to rest on any consideration, it certainly cannot be said that the court's conclusion was clearly erroneous. We not only defer to the trial court's

finding and conclusion in that regard but have independently arrived at the same conclusion. We accordingly rule the defendants' first point adversely to their contention.

■ The next contention of defendants (for which no authorities are cited) is that the court erred in failing to allow them credit for payments of $9,657, which it is said plaintiff admitted having received. For a number of reasons this contention cannot be sustained. As heretofore indicated, defendants offered no evidence of any payments. It is true that in the first count it was alleged that $9,657 had been paid on the first note. In their answer defendants denied all of the allegations in the petition which would include the one relating to payment. Moreover, plaintiff did not recover on Count I but upon another note sued on in Count II. In that count plaintiff alleged that "no part of said note has been paid." We therefore conclude that the allegation of payments in the first count would have no application to the note upon which the second count is based. The fact that plaintiff's *evidence* indicated that there was only one indebtedness would not be a relevant factor in determining the applicability of an alleged admission in the *pleadings*. To say that plaintiff admitted that payments had been made on the note described in the second count would be in direct conflict with his plain and unequivocal allegation to the contrary.

"The rule in most jurisdictions is that the admissions made by a pleader in one count or plea are not admissible against him on an issue raised by his denials or averments made in another count or plea. In other words, where inconsistent counts or defenses are pleaded, the admissions in one of them cannot be used to destroy the effect of the other." 29 Am.Jur.2d, Evidence, § 692, p. 747. The rule stated is supported by Wigmore on Evidence, 3rd Ed., § 1064, p. 48, which states that the rule "forbids any resort to a pleading upon

*another* issue; because the object of each set of pleadings or counts is to raise and to define the separate issues, and any use of the one to aid the other would to that extent defeat this object and prevent the trying of the issue made." In Missouri "the general rule has been applied that, in cases involving multiple pleas, a pleading on one issue may not be used as an admission upon another issue in the same case," and "where a pleader pleads alternatively or inconsistently, as permitted by modern pleading rules, such inconsistent or alternative allegations may not be used against the pleader * * *." Macheca v. Fowler, Mo.Sup., 412 S.W.2d 462, 465. See also McCormick v. Kopmann, 23 Ill.App.2d 189, 161 N.E.2d 720 [7]. As indicated, we rule this point against defendants.

The final contention is that the court erred in computing the amount of the judgment. On the date suit was filed installments had become due which totaled $12,543. Although the note did not provide for interest there is no dispute about the fact that interest at the rate of 6% should be allowed from the date suit was filed. In computing the amount of the judgment the court allowed interest on the foregoing amount until the date of trial. It also included in the amount of the judgment the installments that had become due from the date suit was filed until the trial date, together with interest on each installment from the date it fell due. We have made our own computation of the amount for which judgment should have been rendered and our figure is slightly more than the amount of the judgment. It is therefore obvious that there was no error of computation of which defendants can complain.

The judgment is affirmed.

SEILER, J., and FINCH, Alternate Judge, concur.

BARDGETT, J., not sitting.