Robert Todd GNAU, et al., Plaintiff,

v.

UNION ELECTRIC COMPANY, Defendant 3rd Party Plaintiff-Appellant,

v.

Donald W. CROWE, et al., 3rd Party Defendants-Respondents.

No. 47152.

Missouri Court of Appeals,
Eastern District,
Division One.

May 9, 1984.

James J. Virtel, Ann E. Buckley, St. Louis, Richard Lee Blatt, Robert W. Hammesfahr, Chicago, Ill., for third party plaintiff-appellant.

Paul S. Brown, St. Louis, for third party defendants-respondents McClanahan and Kirby.

Jeffry S. Thomsen, St. Louis, Robert H. Burns, Clayton, for third party defendants-respondents Crowe et al.

SNYDER, Judge.

This is an appeal from a third-party action for contribution arising out of the settlement of a personal injury claim. The trial court granted the third-party defendants' motion for summary judgment and third-party plaintiff Union Electric Company (U.E.) appeals. The judgment is affirmed.

A seven-year-old boy suffered severe electrical burns when he climbed a tree and came into contact with U.E.'s 7,200 volt power line. U.E. paid damages to the boy and his parents pursuant to a settlement agreement.

U.E. now seeks contribution from the trustees of two adjoining subdivisions over which the power line easement extended. The utility asserts the trustees should contribute because they were negligent in not warning the boy, in failing to trim the tree in which he was injured, or in controlling the easement property in some way so as to prevent or eliminate the dangerous condition.

The determinative question is whether the trustees owed a duty to the injured child, the breach of which would subject them to liability for his injuries.

On April 29, 1977, Robert Todd Gnau, then seven years of age, was playing with several other children near a hackberry tree situated on the boundary line of the

Woodside and Flamingo Oaks subdivisions in St. Louis County. Todd was a resident of the Woodside subdivision. The land adjacent to the boundary line was deemed "common ground" by both subdivisions, i.e. all residents of the subdivisions had access to, and a right to use, that area. A rope and tree swing of unknown ownership were attached to the tree, and there was evidence that children were often seen playing around the tree.

On this particular day, the Gnau boy and a friend climbed the hackberry tree. Both boys came into contact with a U.E. power line under circumstances that remain unresolved. Todd Gnau suffered extensive burns to his face, hands and eyes. The other boy was killed. Suit was filed against U.E. U.E. then filed a third-party action for contribution against the trustees of the Flamingo Oaks and Woodside subdivisions.[1]

U.E. ultimately reached a settlement for $2,150,000 with Todd Gnau and $100,000 with his parents. The original petition was dismissed and U.E. filed an amended third-party petition seeking contribution from the trustees of both subdivisions. The trustees then renewed a previous motion for summary judgment which was granted.

■ On appeal from a summary judgment, this court is required to interpret the record in the light most favorable to the party against whom the summary judgment was rendered and to accord to that party the benefit of every doubt. "Summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law.... If a genuine issue of fact exists, summary judgment cannot be granted. A genuine issue of fact exists when there is the slightest doubt about the facts.... *However, the fact in doubt must be a material one which has legal probative force as to a controlling issue.*" *Union Electric Co. v. Clayton Center Ltd.,* 634 S.W.2d 261, 262–263 (Mo.App.1982). (Emphasis added). *See also* Rule 74.04.

There was a plethora of evidence before the trial court when it considered the third-party defendants' motion for summary judgment, including numerous depositions, maps, interrogatories, pleadings and the trust indentures and restrictions applicable to the two subdivisions. After reviewing all the evidence, the trial court granted the trustees' motion for summary judgment.

U.E. has admitted its own liability. It pleads only that the trustees of the subdivisions were concurrently liable because of a duty on the part of the trustees to the children of the subdivision residents. U.E. argues the trustees should be held to a duty to warn the children of the dangerous condition, to notify U.E. that a dangerous condition existed, or to take over U.E.'s duty to trim the trees and eliminate the dangerous condition.

On appeal, U.E. raises four points of error. But the key issue is whether the trustees owed Todd Gnau the duty of reasonable care to warn him or eliminate the dangerous condition, thus raising a genuine issue of material fact as to whether a breach of that duty occurred. Because this court finds that, under these facts, the trustees owed no duty to Todd Gnau, no genuine issue of material fact was raised below and the trial court properly granted respondents' motion for summary judgment.

The power line at issue was located on the easement granted to U.E. by Flamingo Oaks "to construct, reconstruct, use, operate, maintain, add to the number of and patrol on electric or telephone and communication line or lines, or both, consisting of poles, grip anchors, wires, cables, fixtures and appurtenances thereto, including transformers, on, over, across or under" the described land. A fifteen-foot-wide easement over the Woodside subdivision ran parallel to and adjoined the Flamingo Oaks

---

**1.** The named third party defendants are Donald W. Crowe, Albert Hauswirth and Charles Moroson, trustees of Woodside Plat 19, and Kenneth A. McClanahan and George F. Kirby, trustees of Flamingo Oaks, Plat 18.

subdivision easement. The utility poles were on the Flamingo Oaks easement, but the tree in which the boy was injured was on the boundary between the adjoining Flamingo Oaks and Woodside utility easements.

The easement also granted U.E. the right of ingress and egress over, and the right to trim or remove brush and trees on, easement premises and the adjoining premises of the grantor.

■ "Liability for injury to the servient estate or to third persons, where the character of the easement is such that a failure to keep it in repair may result in injury, falls on the owner of the easement or the dominant estate. In the absence of an agreement to the contrary, the dominant estate must keep the easement in repair." *Swingler v. Robinson*, 321 S.W.2d 29, 32 (Mo.App.1959); *Schuricht v. Hammen*, 221 Mo.App. 389, 277 S.W. 944, 945 (1925). See also 28 C.J.S. *Easements* §§ 72, 94(c). The owner of the servient estate is under no obligation to maintain or repair. *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 987 (1933).

In *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), the Supreme Court of North Carolina found that the key in such cases is control. Even where a third-party owner or occupier had knowledge of a potentially harmful condition, the court found that that party could not be held liable if the power company had the sole duty to keep its property safe. In *Green* the court held that any interference or tampering, by the owner or occupier, with the transformer on which a party was injured would encroach on the rights granted to the utility by an easement.

■ Similarly, in this case, the trustees, who were the representative owners and the occupiers of the property from which the easement was granted, and upon which the utility poles were located, did not have the right to deny access to the poles or lines. The poles and power lines were the sole property of U.E. Under the terms of the easement U.E. was granted the right:

"to construct, reconstruct, use, operate, maintain, . . ." the necessary lines and equipment. The easement also granted U.E. the right of ingress and egress to "trim or cut down or cause to be trimmed or cut down at any time and from time to time, any and all bush, saplings, trees, overhanging branches or other obstructions" interfering with or endangering the safety of said equipment.

The subdivision surrendered exclusive use and control of the easement property to U.E. U.E.'s control had been exhibited in several ways.

In 1974, prior to the Gnau incident, a company under contract to U.E. had trimmed the trees on the easement, including the tree in which the accident occurred. A construction plat prepared for U.E. indicated that the trees on this particular easement were to be trimmed by the power company.

A U.E. employee testified that such trees were routinely trimmed every two-and-a-half to three-and-a-half years. There are no personnel in the forestry department of U.E. who actually do the work of trimming the trees that might interfere with U.E. transmission lines. The actual work is done by independent contractors. Trees were only trimmed by the tree trimming company, however, upon receipt of a work order from U.E. No inspection of the trees was made in between trimmings. In addition, there was evidence that trimming trees around power lines was dangerous work and required some level of expertise.

On the other hand, there was no evidence which would support a reasonable expectation on the part of U.E. that the trustees of either subdivision would share in the maintenance of the power lines located on the easement. Although both subdivisions employed persons to mow the grass in common areas, for whatever reasons the grass was never trimmed under or near the utility poles or nearby trees located on the easement.

There was no evidence that any of the trustees ever inspected the power lines or trees, or discussed their maintenance with

U.E. There was no evidence that U.E. ever requested that such an inspection be made on their behalf. Thus, under such circumstances, U.E.'s duty to inspect and maintain the lines on the easement cannot be shifted to or shared by the trustees of the subdivision. See *Union Electric Co. v. Pacific Indemnity Co.*, 422 S.W.2d 87, 92 (Mo.App.1967).

■ The law requires those who generate and transmit electricity to use the highest degree of care to prevent injury which can be reasonably anticipated. *Calderone v. St. Joseph Light and Power Co.*, 557 S.W.2d 658, 663 (Mo.App.1977).

> "An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire. . . . The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high-tension wires insulated in places where children when climbing a tree will not come in contact with them."

*Godfrey v. Kansas City Light and Power Co.*, 299 Mo. 472, 253 S.W. 233, 236 (1923), quoting Curtis' Law of Electricity, § 512. The duty of the utility is non-delegable. 29 C.J.S. Electricity § 38; See also *Union Electric Co. v. Pacific Indemnity Co., supra.*

■ U.E. attempts to establish a duty on the part of the trustees through a paragraph in the indentures of trust for the Woodside and Flamingo Oaks subdivisions, which grants the subdivision trustees, among others, the following "rights, powers and authorities."

* * * * * *

2) To exercise such control over the easements, streets and roads (except for those easements, streets and road which are now or may hereafter be dedicated to public bodies or agencies), entrances, lights, gates, common land, park areas, lakes (including restrictions of use of same), storm water sewers, sanitary sewer trunks and lateral lines, pipes, and disposal and treatment facilities as may be shown on the plat . . . as is necessary to maintain, repair, rebuild, supervise and insure the proper use of said easements, streets, and roads, etc., by the necessary public utilities and others including the right (to themselves and others to whom they may grant permission) to construct, operate and maintain on, under and over said easements and streets, sewers, pipes, poles, wires and other facilities and public utilities for services to the lots shown on said plat.

Setting aside the question whether U.E. may rely on a paragraph in a subdivision trust indenture to which it is not a party, the paragraph establishes no duty on the part of the trustees to resident children in the subdivision.

The paragraph grants trustees the right, power and authority to insure proper use of easements. It does not place a duty on the trustees to do so. U.E. cannot use the language of the indenture, a contract to which it is a stranger, to shift its non-delegable duty to the subdivision trustees. *See generally* 17A C.J.S. *Contracts* § 518–19.

U.E. also cites *Federated Mutual Insurance Co. v. Gray*, 475 F.Supp. 679 (E.D.Mo.1979) in support of its argument. *Federated* insured an electric utility. A twelve-year-old boy was injured when he came into contact with the utility's uninsulated transmission line. *Federated*, on behalf of its insured, paid the boy and his parents $110,000 in settlement of their claims. The insurance company then sued the boy's grandmother, seeking contribution from her based upon an allegation that the grandmother was negligent in allowing the child to come near the dangerous wires when she knew of the condition. The memorandum opinion of the federal district court was handed down in response to a motion to dismiss, which the court denied.

Although this court is not bound by the *Federated* opinion, there are factual distinctions which render it unpersuasive. The status of a grandmother and her grandson on her individual property is dif-

ferent from the status of subdivision trustees and common subdivision property.

Further, *Federated* was concerned primarily with the question of indemnity. The issue of duty on the part of the grandmother was not raised.

The record failed to establish in this case that any type of duty was owed by the trustees of Flamingo Oaks or Woodside to the Gnau boy. Absent the establishment of such a duty, it cannot be held that any genuine issue of material fact was raised before the trial court that would require reversal of the summary judgment for respondents. Rule 74.04.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.