Suzanne KIBBONS, individually and as Natural Mother and Guardian of Kevin Kibbons, Angela Kibbons, and Kelly Kibbons, Plaintiffs–Respondents,

v.

UNION ELECTRIC COMPANY and J.R. Green Properties, Inc., Defendants–Appellants.

No. 73778.

Supreme Court of Missouri, En Banc.

Jan. 28, 1992.
Rehearing Denied Feb. 25, 1992.

Martin J. Toft, Ann E. Buckley, Michael L. Skinner, St. Louis, and Donald R. Morin and Lucy T. Herbers, Clayton, for defendants-appellants.

Steven G. Schumaier, Firmin A. Puricelli, Robert W. Cockerman, Clayton, for plaintiffs-respondents.

ROBERTSON, Chief Justice.

Kevin Kibbons [Kibbons], plaintiffs' decedent, died as a result of electrocution. His surviving spouse and children brought

suit against a real estate developer and an electric utility to recover their damages in wrongful death. The trial court entered a judgment against the two defendants severally for $900,000 each. The real estate developer appealed; the electric utility did not.

Approximately six months after the trial court entered its judgment, and while the developer's appeal rested with the court of appeals, plaintiffs filed a motion for relief from the judgment under Rule 74.06(b)(3) claiming that the judgment entered by the trial court was irregular. The trial court sustained the motion and entered judgment against both defendants jointly and severally in the amount of $1,800,000. The utility appealed from the trial court's order sustaining the motion.

The court of appeals held that plaintiffs failed to make a submissible case against the developer and reversed that portion of the judgment. That court further affirmed the modified judgment against the utility and held that the utility must pay the entire judgment under rules of joint and several liability.

We granted transfer to consider the proper judicial course when a jury renders a verdict assigning to and apportioning fault between the plaintiff and two defendants and it is subsequently determined that only a single defendant bears fault under the law. We have jurisdiction. Mo. Const. art. V, § 10. The judgment of the trial court is reversed and the cause remanded with directions.

## I.

J.R. Green Properties, Inc. [Green] is a real estate developer and had purchased property in St. Louis County for a development as a residential subdivision. Green's predecessor in title had conveyed an easement over this tract, including Lot 6, to Union Electric [UE] to construct, operate, and maintain utility poles and lines over the property. The grantor of the easement further covenanted that it "will not create or permit any obstruction of any kind or character that will interfere with the successful operation and maintenance of said line or lines for any of the purposes aforesaid." UE installed its poles and lines in 1967. Poles were located at the east and west ends of Lot 6, with lines running between them, including an uninsulated 7200 volt line. Subdivision development began in 1985. The original clearing and grading was completed by the end of June, 1985. In July, 1985, UE linemen noticed that the distance between the power line and the ground on Lot 6 had been reduced as a result of grading activity in the subdivision. UE replaced the west pole on Lot 6 to restore the clearances.

In early 1986, McLaren came on the site to grade lots and excavate basements. On September 3, 1986, one of the McLaren employees drove a dump truck under the power lines on Lot 6 with its bed up. The truck caught the neutral wire, tearing it down, and damaged the primary line, causing a temporary blackout. Kibbons reported the incident to UE. UE repaired the primary line and stapled the neutral line to a pole.

On December 24, 1986, the drive shaft broke on a dump truck owned by Kevin Kibbons and Bill McLaren that was being used by McLaren Construction Company employees at the subdivision site. Kibbons used his high lift tractor to push the truck from the point where it broke down to a place under lines on Lot 6. Kibbons and another employee, Jerry Steele, removed the drive shaft.

On December 26, Kibbons brought a new drive shaft to the site to install on the truck. He told Steele to start the truck, let it warm up and raise the bed. Kibbons went under the truck to begin work on the drive shaft. Steele started the truck and the mechanism to raise the bed and then got out of the truck to help Kibbons. As the truck bed continued to rise, it contacted the 7200 volt line and Kibbons was electrocuted.

At trial plaintiffs submitted their case against both Green and UE. The jury returned a verdict in favor of plaintiffs and assessed plaintiffs' damages at $3,000,000, allocating thirty percent fault to Green,

thirty percent fault to UE and forty percent fault to decedent.

The trial court entered judgment against Green for $900,000 and against UE for $900,000. Green appeals from that judgment. Six months after judgment, upon plaintiffs' motion for relief from judgment, the trial court entered a corrected judgment against both defendants jointly and severally in the amount of $1,800,000. UE appeals from this order.

## II.

*Appeal of J.R. Green Properties, Inc.*

Green challenges the submission of Instruction 10, the verdict director, and Instruction 14, which submitted aggravating circumstances for wrongful death. This Court finds that the submission of the verdict director was reversible error; we need not, therefore, address the aggravating circumstances instruction.

Plaintiffs' petition alleged that Green was negligent for a) requiring performance of hazardous work in close proximity to electrical wires, b) failing to warn of the dangerous condition of its land, c) increasing the ground level under the electrical wires, and d) creating and maintaining a hazardous condition on its land without adequate warning. However, Instruction 10, which was modeled on MAI 22.03, submitted the liability of Green solely on the theory that Green had breached a duty to warn of or barricade the uninsulated 7200 volt electric wire.

Green argues that the submission of liability by this instruction was prejudicial error. We agree. By granting this particular easement to UE, Green's predecessors in title surrendered the exclusive use and control of the easement property to UE. *Gnau v. Union Electric Company*, 672 S.W.2d 142, 145 (Mo.App.1984). In the absence of an agreement to the contrary, the owner of the easement is responsible for keeping the property in repair and is liable for any injury resulting from the failure to repair. *Id. See also Mispagel v. Missouri Highway and Transportation Commission*, 785 S.W.2d 279, 282 (Mo. banc 1990);

28 C.J.S. Easements §§ 72, 94(c) (1941); 1 G. Thompson, Thompson on Real Property § 428 (1980).

A landowner has no duty to maintain or repair, *Gnau*, 672 S.W.2d at 145; *Mispagel*, 785 S.W.2d at 282; *Annin v. Lake Montowese Dev. Co., Inc.*, 759 S.W.2d 240, 241–42 (Mo.App.1988), or to warn or barricade dangerous conditions on the easement that are in the sole control of the the holder of the easement. *Gnau*, 672 S.W.2d at 145; *Reyna v. Ayco Development Corp.*, 788 S.W.2d 722 (Tex.App.1990). This is because the landowner is only liable for those injuries caused by devices placed on the premises by the holder of the easement that are under the landowner's possession and control. *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 879 (Mo.App.1984). There is no duty even where the landowner has knowledge of the potentially harmful condition. *Gnau*, 672 S.W.2d at 145, citing *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982).

In *Duke Power*, a child was injured when she touched a transformer on an easement owned by Duke Power Company on land owned by a housing authority and leased to an individual. The lessee knew the box was unlocked and had notified both the power company and the housing authority. In following the principle that it is control and not ownership which determines liability, the North Carolina Supreme Court held that Duke had the sole duty to keep the transformer safe and that the knowledge of the owner and lessee of the servient estate is "irrelevant to the question of their liability" where they had no control over the transformer. 290 S.E.2d at 598.

In *Gnau, supra*, the petition alleged that the servient owners were negligent in failing to warn of a 7200 volt power line, in failing to trim a tree growing under the line, and in failing to prevent or eliminate the dangerous condition. 672 S.W.2d at 143. The court identified the key issue as whether the servient owners had a duty to warn or eliminate the dangerous condition. *Id.* at 144. The court found no duty on the part of the servient landowners and held the duty of the utility to be nondelegable,

citing *Union Electric Co. v. Pacific Indemnity Co.*, 422 S.W.2d 87 (Mo.App.1967), which holds that where a duty to warn of an uninsulated wire exists, it is the nondelegable duty of the electric utility that owns and controls the wire. *Id.* at 92.

*Gnau* was followed by the Texas Court of Appeals in *Reyna v. Ayco Development Corp.*, 788 S.W.2d 722. In that case a child resident of an apartment complex was severely injured when she wandered into an open electrical switching cabinet located on an electrical easement within the apartment complex. Plaintiffs alleged that the complex was negligent in failing to warn of the dangerous condition of the cabinet and in failing to barricade or maintain restricted access to the cabinet. The easement was similar in scope to the one in issue in this case. Relying on the holdings of *Gnau* and *Green* that the duty of care resides in the party who controls the premises, the Texas Court of Appeals held "[a]n owner or occupier who has no control has no duty to warn against the danger or to take any action to relieve the danger." *Reyna*, 788 S.W.2d at 724.

■ In this case, as in *Gnau* and *Duke Power*, there was no evidence that the servient owner had agreed to inspect or maintain the lines in question for UE. UE had sole control of the lines on its easement. Green, having no control of the lines on the easement, could not be liable for any dangerous condition resulting therefrom and accordingly had no duty to maintain, repair, warn of or barricade the condition in order to protect invitees on its own property crossing through the easement.

The determination of the existence of a duty is generally a question of law for the court. The trial court erred in submitting this case to the jury under the theory of a landowner's negligence, as set out in Instruction 10, because the landowner in this case held only a servient estate and thus had no duty to warn or barricade against conditions controlled by the owner of the easement or dominant estate. Since no submissible case was made under this theory and plaintiffs do not suggest that they made a submissible case under any other

theory, the judgment of the circuit court against Green is reversed.

## III.

*Appeal of Union Electric Company*

UE did not appeal the judgment of November 8, 1989, but appeals from the order of the trial court of June 26, 1990, sustaining plaintiff's motion for relief from the judgment.

The original judgment stated in part:

WHEREFORE, it is hereby ordered and adjudged that Suzanne Kibbons individually and as Mother and Guardian of Kevin Kibbons, Angela Kibbons and Kelly Kibbons have and recover of:

| | |
|---|---|
| Union Electric Co. | $900,000.00 |
| J.R. Green Properties, Inc. | $900,000.00 |

Plaintiffs moved for relief from the judgment under Rule 74.06(b)(3). The trial court sustained the motion on June 26, 1990, on the grounds that the November 8 judgment was irregular in that it did not provide for joint and several liability. The trial court corrected the judgment as follows:

WHEREFORE, it is hereby ordered and adjudged that Suzanne Kibbons, individually and as mother and guardian of Kevin Kibbons, Angela Kibbons and Kelly Kibbons have and recover of:

defendants Union Electric Company and J.R. Green Properties, Inc., jointly and severally the sum of $1,800,000.00

UE appeals from this order, pursuant to a notice of appeal filed July 2, 1990.

### A.

*Motion to Dismiss*

■ Plaintiffs have moved to dismiss UE's appeal for lack of jurisdiction, claiming that the order of June 26, 1990, granting relief from an irregular judgment under Rule 74.06(b)(3), was not a final appealable order. We disagree.

Rule 74.06(b)(3) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judg-

ment or order for the following reasons: ... (3) the judgment is irregular.

The common law recognized a motion to vacate for irregularity. *Cross v. Gould,* 131 Mo.App. 585, 594, 110 S.W. 672, 675 (1908). *See Downing v. Still,* 43 Mo. 309, 318 (1869), ("The usual proceeding against irregularities is by motion"). Statutes of this state have recognized the motion since 1889. Section 511.250, RSMo 1986, and prior enactments. *See also Cross, supra,* 110 S.W. at 675. Former Rule 74.32 also recognized the motion. That rule provided: "Judgments in any court of record shall not be set aside for irregularity, on motion, unless such motion be made within three years after the rendition thereof."

Historically, courts considered a motion to vacate a judgment for irregularities as in the nature of an independent proceeding; accordingly, courts permitted an appeal from an order entered upon that motion. *Audsley v. Hale,* 303 Mo. 451, 463, 261 S.W. 117, 121 (1924). In *ABC Fireproof Warehouse Co. v. Clemans,* 658 S.W.2d 28, 30 n. 1 (Mo. banc 1983), this Court found an order setting aside a judgment for irregularity under Rule 74.32 was appealable. *State ex rel. Baldwin v. Dandurand,* 785 S.W.2d 547, 549 (Mo. banc 1990), permitted appeal from an order entered pursuant to a motion filed under Section 511.250.

■ Rule 74.06(b)(3) expressly provides for a right to relief from an irregular judgment. An order entered pursuant to a Rule 74.06(b)(3) motion is appealable. We hold, therefore, that the order and corrected judgment entered June 26, 1990, was a new judgment for purposes of appeal. The time for filing a notice of appeal commenced on the date it was entered. UE filed its appeal in a timely manner. Plaintiffs' motion to dismiss is overruled.

## B.

### Merits

UE claims that the trial court erred in entering a new judgment on June 26, 1990. UE first claims that Rule 74.06(b)(3) permits the court to relieve a party from an irregular judgment but does not permit the

trial court "to increase judgment amount entered against a defendant after the time for appeal has expired."

As a general rule, a judgment is final thirty days after it is entered and may not be vacated or modified by the trial court thereafter. Rule 75.01. Rule 74.06(b)(3) establishes an exception to that general rule; it permits the trial court to "relieve" a party of a final judgment where the judgment is irregular.

*Cross v. Gould,* 110 S.W. at 676, defines "irregular" for purposes of a motion to set aside an irregular judgment.

[A] motion to set aside a judgment for irregularity ... is available as a remedy only in those cases where there is some irregularity appearing in the judgment itself or on the face of the proceeding antecedent thereto. And, while this irregularity need not be one which would render the judgment absolutely void, and therefore subject to be defeated on collateral attack, it must be one which indicates at least that the judgment was given contrary, in some material respect, to the established form and mode of procedure for the orderly administration of justice. An irregularity in the sense of the law may be said to be a want of adherence to some prescribed rule or mode of procedure, consisting either in omitting to do something that is necessary for the due and orderly conduct of the suit, or in doing it at an unseasonable time or in an improper manner.

*See Casper v. Lee,* 362 Mo. 927, 939, 245 S.W.2d 132, 138 (banc 1952); *Wooten v. Friedberg,* 355 Mo. 756, 198 S.W.2d 1, 7 (1946); *Diekmann v. Associates Discount Corp.,* 410 S.W.2d 695, 700 (Mo.App.1966).

■ Here, the irregularity was patent and procedural in nature. The court entered judgment in an improper manner, contrary to the established mode of procedure. As a matter of law, the court was not allowed to enter separate judgments against each defendant. *Chambers v. McNair,* 692 S.W.2d 320, 324 (Mo.App. 1985). "Missouri's rule as to compensatory damages in tort actions is that '[a]ll who

are guilty of participating in the wrongdoing are jointly and severally liable for the whole damage, and the judgment must be in one amount and against all who are not discharged.'" *Id.;* (quoting *Linkogel v. Baker Protective Services, Inc.,* 626 S.W.2d 380, 387 (Mo.App.1981), in turn quoting *State ex rel. Hall v. Cook,* 400 S.W.2d 39, 40 (Mo. banc 1966)). This Court has not held that the rule of joint liability in Missouri has been affected by the adoption of the doctrine of pure comparative fault. *Gustafson v. Benda,* 661 S.W.2d 11, 15–16 (Mo. banc 1983). Thus, the entry of separate judgments against defendants was a patent irregularity for which plaintiffs were entitled to relief under Rule 74.06(b)(3).

UE next contends that the trial court lacks authority to modify the judgment. UE apparently reads the word "relieve" to mean only the power to set aside. *Audsley v. Allen,* 774 S.W.2d 142, 146 n. 5 (Mo. banc 1989), recognizes that Rule 74.06(b) permits a trial court to modify a judgment. This is consistent with the common meaning of "relieve" which includes the power to "ease of an imposition, burden, wrong or oppression by judicial interposition...." Webster's Third Law International Dictionary 1918 (1976). Cf. "modify," *Id.* at 1453. ("To lessen the severity of....")

■ Lest any doubt remain, we expressly hold that Rule 74.06(b) permits a trial court to modify an irregular judgment upon motion timely filed.[1]

Finally, we must determine the rectitude of the trial court's modification of the original, irregular judgment. In so doing, we are mindful of the trial court's conviction that both Green and UE were viable defendants and that the judgment as modified should be entered against both under rules of joint and several liability. We have determined here, however, that plaintiffs failed to make a submissible case against Green. The premise upon which the trial court acted is thus false.

■ Under rules of joint and several liability, UE would be required to pay the entire judgment. Plaintiffs urge us so to hold. Section 2(d) of the Uniform Comparative Fault Act modifies joint and several liability in the event that one or more of the defendants is unable to pay its portion of the judgment. "Upon motion ... the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault."

Yet neither rule applies in this case. Joint and several liability depends on the existence of two or more defendants. (This is the "joint" aspect.) The individual negligence of each contributes to a plaintiff's injury. (This is the "several" aspect.) With the holding that Green is not a proper defendant, rules of joint and several liability are not applicable.

Any modification of the judgment by this Court risks the imposition of an arbitrary result that is not consistent with the jury's verdict. This is because the jury's verdict is ambiguous. On the one hand, the jury may have concluded that the decedent's negligence amounted to somewhat less than half of the total negligence that led to his death. Such a conclusion would permit an assignment of fault to the decedent of 40 percent and to the defendants cumulatively of 60 percent.

On the other hand, the jury could have compared the decedent's negligence to Green's fault and then to UE's fault and concluded that in each instance the decedent's fault exceeded that of each defendant. Such reasoning would support a verdict showing 40 percent fault to the decedent and 30 percent to each of the defendants.

It is simply impossible to divine which reasoning this jury applied. Thus, we cannot know what this jury would have intended if confronted with these facts and only make a submissible case against Green, UE's point is moot.

---

1. UE also assigns error to the trial court failing to enter judgment against Green on UE's cross-claim. Because we hold that plaintiffs failed to

permitted to apportion fault between the decedent and UE.

We conclude that justice requires a remand in this case to determine the proper apportionment of fault between the decedent and UE. Plaintiffs's damages are fixed at $3,000,000 as a result of the jury's verdict in the first trial. On remand, a new jury will be instructed to allocate fault between the decedent and UE and that the two percentages must total 100 percent. The trial court must also instruct the jury that in allocating fault between plaintiffs and defendant, they must assess at least 40 percent but not more than 70 percent of the fault to the decedent; they must further assess at least 30 percent and not more than 60 percent of the fault to UE.

## IV.

The judgment of the trial court as to J.R. Green Properties, Inc., is reversed and the cause remanded for entry of a judgment in favor of J.R. Green, Inc. The judgment of the trial court as to Union Electric is reversed and the cause is remanded for a new trial on the issue of the apportionment of damages only in a manner consistent with this opinion.

COVINGTON, HOLSTEIN, BENTON, and THOMAS, JJ., concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

RENDLEN, J., concurs in opinion of BLACKMAR, J.

BLACKMAR, Justice, concurring in part and dissenting in part.

## I.

I reluctantly agree that the trial court properly set aside the original judgment for irregularity and entered a proper judgment on the verdict.

My reluctance arises because the trial court literally rubber-stamped a judgment entry prepared on the court's usual form, which was signed by counsel for all parties before it was presented to the court. I stand by my statement in *Oldaker v. Pe-*

*ters,* 817 S.W.2d 245, 254 (Mo. banc 1991) (Blackmar, J. concurring), that "it is the responsibility of counsel for the party in whose favor a judgment runs to make sure that there is a proper judgment entry which will accomplish the client's purpose." We hold not infrequently that counsel cannot complain about an error to which they consented.

But the judgment irregularity is patent and the application to correct was timely, and so I am not disposed to disturb the action of the trial court.

I also agree that there was no basis for judgment against the defendant J.R. Green Properties, Inc., and that that judgment is properly reversed outright.

## II.

After careful reflection, and contrary to my initial view, I believe that the judgment for $1,800,000 against Union Electric should be affirmed.

Comparative fault in Missouri is a judicial creation. *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983). The adoption of comparative fault invites problems when there is a partial reversal. There is little guiding precedent since *Gustafson.*

I believe that we should attempt to evolve rules which will avoid the necessity for a partial retrial such as is directed by the principal opinion. Any solution to the problems presented by a partial reversal is somewhat arbitrary. The assessment of percentages of fault, indeed, is an arbitrary process, even if it may be utilitarian.

The jury is expressly instructed that it must determine the percentage of fault to be attributed to the plaintiff independent of its decision as to the fault of any defendant. *MAI–3rd 37.02* reads as follows:

In your verdict you must assess a percentage of fault to plaintiff [whether or not defendant was partly at fault] if you believe: ...

Instruction Number 12 in this case stated in relevant part:

In your verdict you must assess a percentage of fault to decedent Kevin Kib-

bons, whether or not either defendant was partly at fault, if you believe: ...

It is appropriate to assume that the jury followed the instructions and determined the total percentage of the plaintiff's contribution, without regard to the percentages assessed against the particular defendants. There is no reason to think that the jury which heard the case would have returned a different percentage as to these plaintiffs, had the case not been submitted against two defendants.

Defendant Union Electric is liable for the entire amount of the judgment, under principles of joint and several liability. The assessment of percentages as between it and defendant J.R. Green Properties, Inc., did not concern the plaintiff.

The solution I suggest represents, in my view, the most probable expectation of the jury. It has the virtue of disposing of the entire case, and its consistent application will relieve burdens on the judicial system.

I would affirm the judgment as to Union Electric and would reverse the judgment as to J.R. Green Properties, Inc.

RENDLEN, J., joins.