Jerry Lane **JOSEPH**, et al., Appellants,

v.

**MARRIOTT INTERNATIONAL, INC.,** Respondent.

No. WD 53951.

Missouri Court of Appeals, Western District.

Feb. 10, 1998.

Rehearing Denied March 31, 1998.

Arthur C. Popham, Jr., Scott W. Mach, The Popham Law Firm, P.C., Kansas City, for appellants.

John G. Schultz, Bradley C. Nielsen, Franke & Schultz, P.C., Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Chief Judge, Presiding Judge.

Jerry Lane Joseph appeals the trial court's decision dismissing his action against Marriott International, Inc. Mr. Joseph contends the trial court erred in (1) finding Marriott did not owe a duty to Mr. Joseph; and (2) holding section 876 of the Torts Restatement (Second) does not apply to this case and, hence, Marriott could not be held liable for allegedly contributing to the City of Osage Beach's tortious actions. For the reasons explained below, the decision of the trial court is affirmed.

## FACTS

Marriott operates a hotel resort property, "Tan–Tar–A", in Camden County, Missouri just outside the city limits of the City of Osage Beach. Marriott entered a contractual agreement with the City in 1988 which provided that the City would extend and construct a sewer connection pipe beyond its boundaries to Marriott's property and thereby provide disposal of Marriott's sewage through the City's plant for a fixed fee of $7,093.00 per month. Marriott was required to grant the City sewer and construction easements for the connection. The contract provided that "the location and design of all facilities or installations to be constructed by the City on the Resort shall be selected so as to cause minimal interference with the operation of the Resort."

After the connection was complete in 1993, the parties determined that a station for holding deodorizing fluid and injecting it into the outgoing sewer line was needed. As required by the contract, Marriott granted the City an easement to build a service facility to house the storage and dispersal equipment. The City hired an engineering firm to draw plans for the service facility. The facility was located on a steep, rocky hillside with approximately a forty degree angle downward. Servicing the system required daily trips to the storage facility to check the tank levels and flow-settings and to refill the tanks as needed. After the service facility was

constructed, the City replaced the composition shingles with wood shingles at Marriott's request for aesthetic purposes.

The City's engineering plans provided for constructing a concrete stairway with hand railings on the hillside to allow for safe access to the service facility. City workers began constructing the steps from Marriott's property to the service facility. The work on the construction of the steps ceased, however. Jerry Lane Joseph contends the work ceased because Marriott insisted the steps be eliminated from the City's plans. Marriott, however, contends that the City decided to cease construction of the stairs.

The City contracted with Mr. Joseph, an employee and supervisor for the Aqua Rod Company, to operate and maintain the service facility. Mr. Joseph fell on the rock hillside when going down to the station and sustained serious injuries. Mr. Joseph filed suit against Marriott which in turn filed a third-party petition against the City. In the petition, Marriott alleged that the City's maintenance of the utility easement created an unreasonably dangerous condition and that the City failed to exercise ordinary care when it failed to construct and maintain a stairway on the hillside.

Marriott filed a motion for judgment on the pleadings. The court granted the motion finding that Marriott did not owe a duty to Mr. Joseph because it did not exercise control over the service facility. The court also found that Marriott could not be held liable under section 876 of the Second Restatement because that section is limited to the drunk-driving context. This appeal followed.

## STANDARD OF REVIEW

A trial court can properly grant a motion for judgment on the pleadings only if the facts pleaded by the petitioners, together with the benefit of all reasonable inferences drawn therefrom, show that the petitioners could not prevail under any legal theory. *A.R.H. v. W.H.S.*, 876 S.W.2d 687, 688 (Mo. App.1994). A motion for judgment should not be sustained where a material issue of fact exists but should be sustained if, from the face of the pleadings, the movant is entitled to judgment as a matter of law. *Morris*

*v. Brown*, 941 S.W.2d 835, 842 (Mo.App. 1997). A motion for judgment on the pleadings should be granted when the facts pleaded by the opposing party, even if assumed to be true, are insufficient as a matter of law. *Id.*

## I. MARRIOTT DID NOT OWE A DUTY TO MR. JOSEPH

As his first issue on appeal, Mr. Joseph argues that the trial court erred when it granted Marriott partial judgment on the pleadings. Mr Joseph specifically claims that Marriott owed a duty of reasonable care to him because it exercised control over the construction of the sewer service facility.

Providing for sewerage is a governmental function and an exercise of the police power of the state. *Lodge of the Ozarks v. City of Branson*, 796 S.W.2d 646, 650 (Mo. App.1990). A city has no power to hamper the free exercise of its legislative discretion, and the authority to establish and locate sewers and to provide plans for their construction is legislative. *Id.* A city cannot surrender or contract away its governmental functions and powers. *Id.* Governmental functions "may not be hindered or frustrated by contracts between individuals or companies or governmental subdivisions." *Id.* (quoting *State ex rel. Kansas City v. Public Serv. Comm'n*, 524 S.W.2d 855 (Mo. banc 1975)).

When the government exercises its police power to provide sewerage, the landowners who grant easements to the city for the sewer lines may not be held liable for the conditions of the sewer lines. *Zubcic v. Missouri Portland Cement Co.*, 710 S.W.2d 18, 20 (Mo.App.1986). In *Zubcic*, the landowner granted the city an easement to build a sewer line on his property. *Id.* at 19. An employee of the construction company hired by the sewer district to build a sewer line on the easement was buried alive when the walls of the trench in which he was working collapsed. *Id.* The court rejected the contention that the landowner who granted the easement to the city could be held liable. *Id.* at 20. The court reasoned that "[the] landowner's only relation to the sewer trench was

that an easement for the sewer line was established across its land. The completed sewer would belong to [the] sewer district. Under these circumstances, we conclude [the] landowner had no duty to guard against injuries to the plaintiff, an employee of an independent contractor hired by [the] sewer district." *Id.; see also Kibbons v. Union Elec. Co.*, 823 S.W.2d 485, 488 (Mo. banc 1992) (finding landowner was not liable for dangerous condition resulting from maintenance of electrical lines on easement because grant of electrical wire easement to electrical utility gave exclusive use and control of easement property to utility which was then responsible for keeping property in repair and was liable for any injury resulting from failure to repair); *Sheppard v. McFadden Lighting Co.*, 816 S.W.2d 12, 13 (Mo.App.1991)(holding lessee did not have duty to maintain tree planted by city on its easement on lessee's land); *Gnau v. Union Elec. Co.*, 672 S.W.2d 142, 146 (Mo.App.1984) (holding trustees of subdivision had no duty to maintain trees on easement of electric company even though contractual clause gave trustees right power and authority to ensure proper use of easements).

■ Like the landowners in *Zubcic*, Marriott granted the City an easement to build the sewer line and service facility. Here, too, the sewer line and the service facility belonged to the City. As the court in *Zubcic* recognized, the City retained exclusive control over the construction and maintenance of the sewer line and service facility. Marriott lacked the ability to control any part of the construction decisions including the decision whether to install a stairway at the facility. Any requests Marriott may have made to the City regarding whether to install a stairway at the service facility were, like the requests Marriott made regarding the wood shingles, only requests that were within the exclusive prerogative of the City to accept or reject. Marriott, therefore, cannot be held liable for the injuries sustained by Mr. Joseph just as the landowner in *Zubcic* could not be held liable for the injuries of the employee of the independent contractor hired by the City to maintain the sewer line.

Mr. Joseph, however, contends that the City's police power did not extend to the construction of the service facility because the facility was located outside the geographical boundaries of the City. Mr. Joseph, in essence, argues that by providing for sewage outside its jurisdictional boundaries, the City's services are proprietary in nature rather than governmental and, hence, the City did not retain exclusive control over the easement. He concludes that because the City did not retain exclusive control over the easement, Marriott may be held liable in negligence.

■ The general rule in Missouri is that an owner of an easement is responsible for keeping the property in repair and is liable for any injury resulting from the failure to repair. *Kibbons*, 823 S.W.2d at 488. The landowner who granted the easement may be held liable only if the injuries are caused by devices placed on the premises that are under the landowner's possession and control. *Id.* A landowner who grants the city an easement to assure proper sewer facilities may not be held liable in negligence because the city, by nature of its police power, retains exclusive control over the acquired property. *Zubcic*, 710 S.W.2d at 20.

Whether the City's police power extends outside its geographical boundaries need not be determined in this case because, in any event, the City retained exclusive control over the easement, and hence, Marriott cannot be held liable in negligence for the maintenance of the easement. In *Kibbons*, the Missouri Supreme Court analyzed whether a landowner could be held liable in negligence for the maintenance of an easement. A real estate developer, Green, granted an easement to Union Electric to construct, operate and maintain utility lines and poles over the residential subdivision. *Kibbons*, 823 S.W.2d at 487. After the electrical lines were installed, Green hired a construction company to grade lots and excavate basements. *Id.* During the excavation, a construction worker was electrocuted when his truck bed contacted an exposed volt line. *Id.* The family of the deceased worker sued both Union Electric and Green. *Id.* The court held that the submission of liability as to Green was error.

*Id.* at 488–89. The court reasoned, "UE had sole control of the lines on its easement. Green, having no control of the lines on the easement, could not be liable for any dangerous condition resulting therefrom and accordingly had no duty to maintain, repair, warn of or barricade the condition in order to protect invitees on its property crossing the easement." *Id.* at 489.

Even *assuming arguendo* that the City did not have exclusive control over the easement by nature of its police power, it is clear that under *Kibbons,* the City nevertheless retained exclusive control over the easement and, therefore, Marriott may not be held liable for Mr. Joseph's injuries. Here, as in *Kibbons,* Marriott lacked control over the construction and maintenance of the service center. Marriott granted an easement to the City to construct the service facility and relinquished control over the construction and maintenance of the facility in order to allow the City to serve the community's needs for proper sewage facilities. Although the easement granted by Marriott to the City was outside the City limits, because Marriott relinquished control of its property to the City, the City, rather than Marriott, was responsible for the construction and maintenance of the service facility and was liable for any injury resulting from the failure to properly construct and maintain the service center. Because the City had exclusive control over the service center, Marriott could not be liable for any dangerous condition resulting from the construction or maintenance of the service center just as the landowner in *Kibbons* could not be held liable in negligence. Marriott, therefore, did not owe a duty to Mr. Joseph.

Mr. Joseph attempts to establish a duty on Marriott by reference to the contract between Marriott and the City. Paragraph four of the contract provides:

> All work to be performed by the city shall be performed in a good and workmanlike manner and shall be performed so as to minimize any interference caused thereby with the operation of the Resort. The location and design of all facilities or installations to be constructed by the City on the Resort shall be selected so as to cause minimal interference with the operation of the Resort.

Paragraph four imposes some limitations on the City's manner of construction of the service facility. It does not impose a duty on Marriott to insure the proper construction of the service facility. The nondelegable duty of the City to assure proper construction of the service facility, therefore, was not affected by the contract between Marriott and the City. Because the City retained exclusive control over the construction and maintenance of the service facility under the contract, Marriott did not owe a duty to Mr. Joseph. *Id.* at 488. The trial court, therefore, did not err in finding Marriott did not owe a duty to Mr. Joseph. Point one is denied.

## II. MARRIOTT CANNOT BE HELD LIABLE FOR ALLEGEDLY CONTRIBUTING TO THE CITY'S DECISION NOT TO BUILD STAIRS TO THE STORAGE FACILITY

Mr. Joseph contends that even if Marriott did not owe a duty to Mr. Joseph, Marriott can be held liable under section 876(b) of the Restatement of Torts (Second). Section 876 of the Second Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so as to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his conduct, separately considered, constitutes a breach of duty to the third person.

Comment d. on subsection (b) states that "[a]dvice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance." Marriott, however, contends that the trial court was correct in finding that section 876 is limited to situations involving passenger encouragement of drunk driving. In support

of its position, Marriott cites *Shelter Mutual Ins. Co. v. White*, 930 S.W.2d 1 (Mo.App. 1996) where this court imposed liability on the passengers of a drunk driver whom encouraged him to drink, drive at excessive speeds and break the traffic laws.

Whether section 876 applies outside the drunk driving context, however, need not be determined because under the facts of this case, section 876(b) could not apply. Subsection (b) specifically requires that the party "know that the other's conduct constitutes a breach of duty." Even assuming that Marriott did suggest the City eliminate from the construction plans the stairway to the service facility, that fact could not establish that Marriott was aware the removal of the stairway was tortious conduct on the part of the City. Marriott, as a servient estate holder, was not required to define the boundaries of the duty owed by the City to Mr. Joseph, an employee of the City hired by the City to maintain City-owned equipment on City-operated land. Marriott, therefore, could not have known that the City's conduct constituted a breach of duty to Mr. Joseph and, hence, subsection (b) of section 876 is inapplicable.

Mr. Joseph, however, argues that Marriott's third-party petition against the City establishes the requisite knowledge under section 876(b). In its third-party petition, Marriott alleged:

13. Third–Party defendant knew or should have known that its occupancy and maintenance of the utility easement, where plaintiff allegedly fell, constituted an unreasonably dangerous condition, was unsafe, was not suited for the purposes it was used, and constituted an unreasonable risk of harm.

14. Third–Party defendant knew or should have known that steps, stairways, or an improved pathway should have been constructed and utilized for the servicing of its deodorant and pump station. However, third-party defendant failed to exercise ordinary care in that it failed to construct and maintain such steps, stairs or pathways.

Marriott counters that the admissions in its third-party petition are not admissible against it when assessing Marriott's liability under section 876(b). The rule in Missouri is that "the admissions made by a pleader in one count or plea are not admissible against him on an issue raised by his denials or averments made in another count or plea. In other words, where inconsistent counts or defenses are pleaded, the admissions in one of them cannot be used to destroy the effect of the other." *Luyties Pharmacal Co. v. Frederic Co., Inc.*, 716 S.W.2d 831 (Mo.App.1986)(citing *Jenkins v. Simmons*, 472 S.W.2d 417, 421 (Mo.1971)).

In Marriott's third-party petition, Marriott stated that the City was negligent. Marriott's statements in the third-party petition, however, contrast with its repeated denials of any knowledge that the City's conduct was tortious. Marriott's statements that the City was negligent, therefore, are not admissible in assessing Marriott's liability under section 876(b) of the Restatement (Second) of Torts. The trial court did not err in finding Marriott could not be held liable under section 876. Point two is denied.

The order of the trial court is affirmed.

All concur.

## DENIAL OF MOTION FOR REHEARING

PER CURIAM.

Jerry Lane Joseph, *et al.*, appealed the trial court's decision dismissing their action against Marriott International, Inc. Mr. Joseph contended on appeal that the trial court erred in (1) finding Marriott did not owe a duty to Mr. Joseph; and (2) holding section 876 of the Restatement of Torts (Second) does not apply to this case and, hence, Marriott could not be held liable for allegedly contributing to the City of Osage Beach's tortious actions. This court affirmed the decision of the trial court in an opinion filed February 10, 1998.

Mr. Joseph filed a motion for rehearing on February 25, 1998. Among the arguments asserted was the claim that the court's opinion of February 10, 1998, should be vacated and rehearing granted due to the

court's "erroneous belief of property owner-ship." In support of this contention, Mr. Joseph notes that in its opinion, the court stated "Marriott granted the City an easement to build a sewer line and service facility." Mr. Joseph argues that the motion for rehearing should be granted because "this statement is totally contrary to the undisputed, true, fact that the property from which the easement was taken was *not owned* by Marriott, only a lessee of the adjacent property, but by the Duenke Estate, original developers of the area, which *did grant* the easement to the City of Osage Beach for the construction of the sewer facility in question privately serving Marriott's Tan–Tar–A Resort." (emphasis in original). Mr. Joseph failed to cite any reference to the legal file supporting this allegation. The Duenke Estate's alleged ownership of the property is not asserted in the petition filed initiating the action. Additionally, the assertion that the property from which the easement was taken was owned by the Duenke Estate rather than Marriott is not referenced in either Mr. Joseph or Marriott's statement of facts in their briefs to this court and was not mentioned in oral arguments before this court. Review of the legal file reveals that the only reference to the Duenke Estate's alleged ownership of the property from which the easement was taken is in footnote 1 of Marriott's motion for partial judgment on the pleadings were Marriott stated:

> Although not specifically pleaded, and not required for this motion, Marriott states to the Court that the easement owned by the City was on property owned by the Duenke Trust, and not Marriott. Therefore, not only was the deodorant pump station and stairs to be placed upon an easement owned by the City, but that easement was not even on property owned by Marriott.

(L.F. 63). This reference to the Duenke Estate's alleged ownership of the property on which the easement for the sewage facility existed is insufficient to accept as a formal assertion in contravention of assertions made to this court that Marriott owned the property on which the easement was granted and, therefore, rehearing is not warranted.

Even assuming *arguendo*, that the reference to the Duenke Estate's alleged ownership of the property on which the easement was granted was sufficient for this court to consider as a fact or a factual assertion the Duenke Estate's ownership of the land, such would not alter the ultimate decision of this court. As noted in the court's opinion, providing for sewerage is a governmental function and an exercise of the police power of the state. *Lodge of the Ozarks v. City of Branson,* 796 S.W.2d 646, 650 (Mo. App.1990). When the government exercises its police power to provide sewerage, the landowners who grant easements to the city for such services may not be held liable for the conditions of the services. *Zubcic v. Missouri Portland Cement Co.,* 710 S.W.2d 18, 20 (Mo.App.1986). The principle enunciated in *Zubcic* applies equally where the liability of a lessee is at issue. *Sheppard v. McFadden Lighting Co.,* 816 S.W.2d 12, 13 (Mo.App.1991). Thus, when the city possesses an easement on a portion of the property owned by the lessor which is leased to the lessee, the lessee may not be held liable for the government's maintenance of that easement. *Id.* The Duenke Estate's alleged ownership of the property from which the easement was granted, therefore, was not dispositive of Marriott's legal liability. Accordingly, even if Marriott leased the property from which the easement was taken rather than owning the property, it does not impose a duty on Marriott to maintain the service center.

The other arguments asserted in Mr. Joseph's Motion for Rehearing are without merit, also.

Mr. Joseph's motion for rehearing is denied.