IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

SCOTT CLARK, surviving parent and )
personal representative of JUSTIN )
CHRISTOPHER CLARK, deceased, on )
behalf of himself and SANDY CLARK, )
surviving parent of the deceased, and ) 2 CA-CV 2003-0026
CHEALSEA CLARK, SALLY ANN ) DEPARTMENT A
CLARK, EMILY CLARK, and ETHAN )
CLARK, their children, ) O P I N I O N
)
Plaintiffs/Appellants, )
)
v. )
)
NEW MAGMA IRRIGATION & )
DRAINAGE DISTRICT, a municipal )
corporation and political subdivision of )
the State of Arizona, )
)
Defendant/Appellee. )
)

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV200100645

Honorable William J. O'Neil, Judge

AFFIRMED

LaVelle & LaVelle, PLC
  By Michael J. LaVelle and Matthew K. LaVelle                    Phoenix
                                              Attorneys for Plaintiffs/Appellants

Jennings, Haug & Cunningham, LLP
  By Jorge Franco, Jr. and William F. Begley                      Phoenix
                                              Attorneys for Defendant/Appellee

---

F L Ó R E Z, Judge.

¶1        Appellant Scott Clark sued Paul and Rosanne Smithling and New Magma Irrigation & Drainage District for the wrongful death of his fourteen-year-old son, Justin, who was killed when he drove an off-road motorcycle into a steel cable Paul Smithling had strung across a portion of the Smithlings' property. Clark also alleged that the cable constituted a public nuisance. Clark appeals from the trial court's granting of summary judgment in favor of the District.[1]

## Background

¶2        The following facts are undisputed. Exercising its rights reserved under the Canal Act of August 30, 1890, 43 U.S.C.A. § 945, the United States government entered into an agreement with the previous owner of the Smithlings' property to place and maintain an irrigation canal on the Smithlings' land as part of the Central Arizona Project. The

---

[1]Clark additionally alleged intentional infliction of emotional distress, but has not argued that the trial court erred in granting the motion for summary judgment on that claim.

agreement gave the United States a right-of-way easement over the property and provides in part:

> The Landowner hereby ratifies and affirms the right of the United States to construct, reconstruct, operate and maintain the aforementioned water distribution system canals, laterals and ditches within said parcel and to exercise the right of ingress thereto and egress therefrom, in accordance with rights reserved to the United States . . . ; and it is agreed by the Landowner not to . . . install or construct any improvements thereon or in any other way interfere with the use thereof by the United States for the purposes described.

Pursuant to a contract with the United States, the District assumed the care, operation, and maintenance of the canal constructed on the property.

¶3       The canal bisects the Smithlings' land, running north and south through the eastern portion of the property. Dirt access roads on which District personnel travel to and along the canal are on each side of it. The easement for ingress and egress includes the access roads and extends eastward to the Smithlings' east property line.

¶4       Frustrated by people using the eastern access road to enter his property without authorization, Smithling first asked the District to construct gates across it. The District had erected gates on the access road to the west of the canal but told Smithling it did not have funds to install gates on the eastern access road at the same time. Smithling then constructed a fence himself. To the east of the canal, he sank galvanized steel poles into cement footings approximately every twenty feet, beginning about eight to ten feet east of the access road on the northern boundary of his property and continuing along the northern, eastern, and

southern property lines. He connected them with a single strand of quarter-inch, plastic-laminated steel cable, strung approximately three feet above the ground through eyelets in the steel poles. In order to preserve the District's access to the canal, Smithling attached the cable from the poles closest to the eastern canal access road to movable wooden sawhorses that he placed in the road. Smithling attached a sign to the sawhorses that read "No Trespassing, Access to New Magma Irrigation Only," placed signs reading "Private Property, No Trespassing," and tied colored markers to the cable, but these markers and signs were not always present.

¶5        After Smithling erected the cable fence, the District received complaints about it, including at least one report that a child had been injured by driving an all-terrain vehicle (ATV) into the cable. The District asked the Smithlings to remove the fence, but they refused. In August 1999, Justin was injured while riding as a passenger on an ATV that struck the Smithlings' cable fence; this accident was not reported to the District. About seven months later, Justin was killed when he drove an off-road motorcycle into approximately the same section of the cable fence on the northern boundary of the Smithlings' property just east of the eastern access road. Clark then sued the Smithlings and the District. The Smithlings settled with Clark, and the court granted summary judgment in favor of the District.

**The District's Action Against the Smithlings**

¶6          Prior to Justin's fatal accident, the District filed a complaint against the Smithlings for declaratory and injunctive relief premised on its contention that the cable fence interfered with its access to the property and violated the easement agreement. The District also asked the court to issue a preliminary injunction requiring the Smithlings to remove the cable fence. The judge denied the request for a preliminary injunction and, apparently, denied the District's later request for reconsideration, which was based in part on Justin's death.[2]

**Discussion**

¶7          Summary judgment is only appropriate when there are no genuine issues of material fact and the requesting party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). We review a trial court's grant of summary judgment de novo, viewing the facts and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Tonto Creek Estates Homeowners Ass'n v. Ariz. Corp. Comm'n*, 177 Ariz. 49, 864 P.2d 1081 (App. 1993).

---

[2]At the time of Justin's death, the judge had denied the District's request for a preliminary injunction, but trial on the District's complaint had not yet begun. After a bench trial, the judge entered judgment in favor of the Smithlings, finding that the removable sawhorses placed on the access road were "not unreasonable or unnecessary to prevent unauthorized use." The District appealed from that judgment, which this court reversed. *New Magma Irrigation & Drainage Dist. v. Smithling*, No. 2 CA-CV 2001-0221 (memorandum decision filed July 30, 2002).

5

¶8        Clark's wrongful death claim was based on his contention that the District had negligently failed to protect Justin from the Smithlings' fence or warn him of the danger. "The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach." *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989). Therefore, "a negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Whether a legal duty exists is a question of law that we review de novo. *See Markowitz.* We affirm the trial court's grant of summary judgment on this claim because we conclude the District did not owe a duty to Justin to warn him of or protect him from the Smithlings' cable fence.

¶9        Without coherent and developed argument, Clark concludes that "there can be no mistake that an irrigation district who constructs a road in a populated area, and allows people living in the area to use the road for travel and recreational purposes, has the legal responsibility to act reasonably." Although Clark asserts in his opening brief that it "would be improper to attempt to place [Justin] into a category, (i.e., invitee, licensee, or trespasser,) prior to determining if a duty did exist," he asserts in his reply brief that Justin was an invitee, which in and of itself established a duty. Clark also seems to concede the District would

6

have no duty if it did not control the easement, but argues that control is a question of fact for the jury.

¶10 We determine whether a duty exists by analyzing the relationship between Justin and the District. *See id*. The only relationship between them was the connection of each to the Smithlings' property. Therefore, we must analyze both Justin's and the District's relationship to that property. We reject Clark's argument that Justin's status as an invitee by itself conferred a duty on the District. Because there is an issue of fact on whether Justin was an invitee or a trespasser, we assume for purposes of our analysis that he was an invitee, *see Tonto Creek*, but the District's relationship to the land is equally important.

¶11 It appears from the record before us that the District is a contractor of the United States, which holds an easement to use a portion of the Smithlings' property. However, we analyze the relationship between the District and Justin as if the District were itself the easement holder, because that is how both parties have argued the issue to us.[3]

---

[3]Accordingly, we express no opinion on whether or how a party's status as the contractor of an easement holder affects the party's relationship to invitees on the servient estate or whether the scope of any duty a contractor owes differs from that of an easement holder.

Additionally, the parties have not asserted whether the easement in this case is an exclusive or nonexclusive easement, nor does the easement agreement specifically so state. Therefore, we do not decide whether the easement is exclusive or nonexclusive, and although our reasoning would be applicable to a nonexclusive easement, because the parties have not argued the character of the easement, we express no opinion on whether or how our analysis here would be affected if the easement were indisputably an exclusive easement.

7

¶12     As an easement holder, the District has a nonpossessory interest in the Smithlings' land. *See* Restatement (Third) of Property § 1.2 (2000) (easement is a nonpossessory right to enter and use land possessed by another); *see also* 4 Richard R. Powell, *Powell on Real Property* § 34.01[1] (Michael Allan Wolf ed., 2000). The holder of an affirmative easement has only a right "'to use the land of another for a specific purpose.'" *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, ¶ 45, 972 P.2d 1010, 1019 (App. 1998), *quoting Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 208, 818 P.2d 190, 193 (App. 1991). In this case, the easement agreement granted the District a right of ingress and egress and the right to "construct, reconstruct, operate and maintain" a canal on the Smithlings' property.

¶13     Implicitly, the District recognizes that it might have had a duty to act with reasonable care in using the easement property. It argues, however, that it owed no duty to Justin *with respect to the cable fence* because it did not install or maintain the fence, and the fence was not otherwise related to its *use* of the property, citing *Cody F. v. Falletti*, 112 Cal. Rptr. 2d 593 (Ct. App. 2001). In that case, an eleven-year-old boy was mauled by a pack of hunting and guard dogs while walking on a private street over which the members of a subdivision association had an easement for ingress and egress. The association was also "responsible for maintenance of the private streets and promulgation and enforcement of rules for use and enjoyment of the streets." *Id*. at 596. The dogs had escaped from the property of an association member. In concluding that the members of the association, other than the dogs' owner, owed no duty to the child, the court noted:

8

The owner of an easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose, such as a driveway, a drainage ditch or even a pipeline." . . . The easement owner has no possessory right in the land beyond the limited use of the land granted by the easement. The nature of the duty owed by the owner of an interest in real property must have a relationship to the degree of control conferred by the scope of the ownership interest itself. An easement interest does not necessarily translate into a tort duty.

*Id.* at 601 (citations omitted), *quoting Long Beach Unified Sch. Dist. v. Godwin Living Trust*, 32 F.3d 1364, 1368 (9th Cir. 1994). The court then concluded:

The right of control that attends ownership of an easement has a narrower scope than the right of control that accompanies fee ownership of real property. Therefore, the corresponding duty to third parties in managing the property interest must also be narrower in scope and tied to the reason that the easement is granted.

*Id*. at 603-04.

¶14 We agree with the California court's analysis. An easement holder, by virtue of its limited interest in the land, has no duty to invitees on the servient estate for conditions on the land that bear no relationship to the easement holder's use. *Id.* The duty owed by virtue of possession of an interest in land must be related to that interest. *Id.* In other words, we agree that an easement holder has a duty to act reasonably under the circumstances *in its use* of the servient estate, but conclude that the duty does not extend beyond the scope of that use.

9

¶15        In reaching this conclusion, we are aware that the issues of duty and causation often intersect and that they do so in this case. *See Sabina v. Yavapai County Flood Control Dist.*, 196 Ariz. 166, 993 P.2d 1130 (App. 1999). In *Sabina*, the plaintiff had asserted a negligence claim against the Yavapai County Flood Control District after she fell into a drainage ditch owned by the City of Sedona but regulated by the flood control district. As Clark did in this case, the plaintiff in *Sabina* alleged that the district had been negligent because it had known about the dangerous condition (an unlit, unguarded drainage ditch), but had not exercised its regulatory powers to require that the danger be corrected. Division One of this court affirmed a summary judgment in favor of the district, finding that, although the district might have been negligent in failing to correct the dangerous condition, the injury-causing event had been outside the scope of the district's regulatory authority. Therefore, the court concluded, the hazard fell outside the range of the district's duty and had not resulted from the recognizable risk that had made the district's conduct negligent.

¶16        The court in *Sabina* acknowledged the intersection between duty and causation. The court quoted W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 42, at 274 (5th ed. 1984), to illustrate that "'[i]t is quite possible to state every question which arises in connection with 'proximate cause' in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?'" *Sabina*, 196 Ariz. 166, ¶ 18, 993 P.2d at 1134. The court then explained:

> If we confine ourselves to the first part of Prosser's
> question—was the defendant under any sort of duty—and defer

10

addressing the second part—did the duty encompass the event which did in fact occur—the answer to the first part undisputably is yes. The [Flood Control] District had the regulatory duty to restrict or prohibit floodplain uses that were "dangerous to health, safety, and property *due to water or erosion hazards*." Yavapai County Ordinance 1987-1, § 1.4 (emphasis added). And in performance of that regulatory duty, the District had the common law duty "to act reasonably in the light of foreseeable and unreasonable risks."

*Sabina*, 196 Ariz. 166, ¶ 18, 993 P.2d at 1134, *quoting Rogers v. Retrum*, 170 Ariz. 399, 400, 825 P.2d 20, 21 (App. 1991). But because the flood control district had limited regulatory authority and did not own the ditch the plaintiff had fallen into, the court addressed the second part of the question and determined that the injury was outside the scope of the district's duty.

¶17        This case presents a similar issue. The District is not the landowner and has only a limited right to use the Smithlings' property. Although the District had a duty to act reasonably in using the property, because the cable fence was not part of that use, the fence did not fall within the scope of the District's duty. As Division One concluded in *Sabina*, mere knowledge of a dangerous condition does not bring a dangerous condition within the scope of an easement holder's duty.

¶18        In *Cody F.*, the court said it was "unaware of any case in which an easement holder was held responsible for an action that had no relationship to the scope of the easement granted." 112 Cal. Rptr. 2d at 602. Likewise, we have found no case in which an

11

easement holder has been held responsible for a condition on the land unrelated to the scope of the easement holder's use. Clark relies on two cases, neither of which involves such facts.

¶19 In *Joseph v. Marriott International, Inc.*, 967 S.W.2d 624 (Mo. Ct. App. 1998), a city contractor was injured when he fell on property Marriott owned but on which the city had an easement to build and maintain a sewer line and service facility. The issue in that case was whether landowner Marriott could be held liable for the injury when the city maintained exclusive ownership and control of the sewer line and facility but had failed to finish building steps and a handrail for workers to gain access to the facility. Although the court noted "[t]he general rule in Missouri is that an owner of an easement is responsible for keeping the property in repair and is liable for any injury resulting from the failure to repair," it did not address whether an easement holder's duty extends to conditions placed and maintained on land by the landowner. *Id.* at 628. In fact, in affirming a judgment on the pleadings in favor of Marriott, the court emphasized the city's ownership of and control over the sewer line and its decision not to build stairs to the facility.

¶20 In *Hartman v. Walkertown Shopping Center, Inc.*, 439 S.E.2d 787 (N.C. Ct. App. 1994), an invitee sued a shopping center landowner for damages sustained from stepping onto a sunken water meter cover. The plaintiff sued the shopping center for a condition created by an easement holder, a sanitary district. The appellate court reversed a summary judgment in favor of the shopping center and based the reversal on the center's duty as a landowner. Although the dangerous condition had been created by the easement holder,

12

the court found that the shopping center had known about the dangerous condition and had tolerated or acquiesced in its existence.

¶21 Embedded in the analyses of the cases discussed above is the concept of control, which Clark argues is an underlying issue of fact rendering improper the trial court's grant of summary judgment. An easement holder's limited right in the servient estate coincides with a lack of control over land conditions outside the easement holder's use. *See Cody F.* Our conclusion that the District owed no duty to Justin with regard to the cable fence is based on the District's lack of control over the fence. However, we do not agree with Clark that this record presents a question of fact on that issue.

¶22 Clark contends that, because the District holds an easement over the servient estate, built an access road on it, and did nothing to prevent the public from using the road, a jury should be permitted to determine whether it controlled the easement. But the issue is not whether the District controlled its easement. The easement simply allowed the District to use the land for limited purposes. *See Siler.* The relevant question is whether the cable fence fell within the scope of the district's easement. If control is a material fact, as Clark contends, it is control over the cable fence that is relevant. *See Sabina; Cody F.; Joseph.* Clark presented no evidence that the District had any control over the cable fence. Indeed, at the time of Justin's accident, a court order existed denying the District's request that the Smithlings remove the fence. There is no material issue of fact on whether the District controlled the cable fence. And, because the fence was not part of the District's use of the

13

property, we conclude that the District had no duty with regard to it.  Accordingly, we affirm the trial court's summary judgment on Clark's wrongful-death claim.

**¶23**　　　We also conclude that the trial court properly granted summary judgment on Clark's public nuisance claim.  Clark's argument on appeal on the claim consists of a single paragraph in his opening brief, in which he asserts that the District "maintained and controlled [its] easement" and cites *City of Phoenix v. Whiting*, 10 Ariz. App. 189, 195, 457 P.2d 729, 735 (1969), which, he says, recognized that a city "may" be held liable for creating a public nuisance.  Because we have already found no genuine issue of fact exists on the District's control of the cable fence, we find no error in the trial court's grant of summary judgment on this claim.

**¶24**　　　Affirmed.

_____
　　　　　　　　　M. JAN FLÓREZ, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge



_____
JOSEPH W. HOWARD, Judge


14