Dear Representative Turner,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
If a landowner grants a County Conservation District aneasement for operating and maintaining flood control structures(watersheds) on his/her land, and subsequently builds a facility,such as a campground, on the watershed site, does the CountyConservation District or its individual Directors face potentialliability to campers injured or killed on the site?
¶ 1 County Conservation Districts ("Conservation Districts") serve as the primary local unit of government responsible for the conservation of the renewable natural resources of the State, including the control and prevention of floodwater and sediment damages, and the disposal of excess surface waters. 27A O.S. 2001, §§ 3-1-102[27A-3-1-102], 3-1-103(1). Conservation Districts are empowered to acquire real property or any interests therein, and construct, operate and maintain structures necessary for upstream flood control. Id. § 3-3-105(5), (7). Some landowners have granted Conservation Districts easements permitting the construction, operation, maintenance and inspection of floodwater-retarding structures (watersheds) on their land. See,e.g., Fowler v. Lincoln County Conservation Dist., 15 P.3d 502,504, 504 n. 1 (Okla. 2000); Watkins v. Grady County Soil WaterConservation Dist., 438 P.2d 491, 492 (Okla. 1968).
¶ 2 Conservation Districts are political subdivisions for purposes of Oklahoma's Governmental Tort Claims Act ("GTCA"). 51O.S. Supp. 2004, § 152[51-152](8)(h). According to the Oklahoma Supreme Court, "[s] ubject only to the Act's specific limitations andexceptions, the GTCA extends governmental accountability to alltorts for which a private person or entity would be liable. The legislature retained in force certain forms of immunity from liability by providing in § 155 thirty-two carefully circumscribed exempted areas." McCathern v. City of OklahomaCity, 95 P.3d 1090, 1096 (Okla. 2004) (footnote omitted). Therefore, Conservation Districts are generally liable for torts, subject to the exemptions and limitations found in the GTCA.
¶ 3 With respect to harm occasioned on the premises of others, Oklahoma "has steadfastly adhered to the common law regime in premises liability cases." Pickens v. Tulsa Metro. Ministry,951 P.2d 1079, 1083 (Okla. 1997). In Pickens, the Oklahoma Supreme Court explained:
 To a trespasser, a landowner owes in the common law status-based classification system only a duty to avoid injuring him wilfully or wantonly. To a licensee, an owner owes a duty to exercise reasonable care to disclose to him the existence of dangerous defects known to the owner, but unlikely to be discovered by the licensee. This duty extends to conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like. To an invitee, an owner owes the additional duty of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor. Even vis-a-vis an invitee, to whom a landowner owes the highest duty in this trichotomous classification system, the law does not require that the landowner protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. In other words, a landowner owes to an invitee, as well as to a licensee, a duty to protect him from conditions which are in the nature of hidden dangers, traps, snares and the like.
Id. at 1083-84 (footnotes omitted). The Supreme Court has also held that "[n]othing in the GTCA reflects a legislative intent to abrogate (or diminish) either the duty of care that governs premises liability or the standard of care the government owes to an individual." McCathern, 95 P.3d at 1097.
¶ 4 No Oklahoma cases appear to have directly addressed the effect of owning less than a possessory interest in land on the doctrine of premises liability. However, some courts have remarked on the importance of possession and control of the premises at issue as a touchstone for fixing liability. The Oklahoma Court of Civil Appeals has stated that "a lessee is liable to a third party injured on the leased premises only when the lessee (1) has control of the premises, (2) has had a reasonable opportunity to inspect the premises, and (3) could have discovered the defect upon inspection." Strader-Faiazi v.Edmond Fourth of July Festivals, 28 P.3d 1161, 1162-63
(Okla.Ct.App. 2001) (finding that "the Defendant's lack of control over either the leased premises or the remainder of the UCO campus, the lack of a reasonable opportunity to inspect even if control had been given, and the hidden nature of the defect each mandate judgment in Defendant's favor"); see also Abernathy v.Otis Elevator Corp., 533 P.2d 971, 974-75 (Okla. 1975) (holding that defendant did not have control of elevator and its "liability for injury to persons using the elevator would be because of negligence, if any, in performing its contract to maintain the elevator"); Qualls v. United States ElevatorCorp., 863 P.2d 457, 462-63 (Okla. 1993) (explaining that "[t]he required control element may be shifted and, under somecircumstances, it may be shared" and that the duty to third persons "may be measured by the nature and scope of [the] contractual undertaking").
¶ 5 An Arizona court has more directly addressed the concept of control and its effect on the duties an easement holder might owe to third-party invitees invited by the holder of the servient estate, or the estate burdened by the easement. See Clark v. NewMagma Irrigation Drainage Dist., 92 P.3d 876 (Ariz.Ct.App. 2004). In Clark, the family of a 14-year-old, who died when he drove a motorcycle into a cable fence the property owner had built across an access road to an irrigation ditch, brought a wrongful death action against the irrigation and drainage district that had an easement on the property. The court, agreeing with a California court's analysis, explained:
¶ 6 As an easement holder, the District has a nonpossessory interest in the Smithlings' land. The holder of an affirmative easement has only a right "to use the land of another for a specific purpose." In this case, the easement agreement granted the District a right of ingress and egress and the right to "construct, reconstruct, operate and maintain" a canal on the Smithlings' property.
Id. at 879 (citations omitted).
¶ 7 "[T]he District recognize[d] that it might have had a duty to act with reasonable care in using the easement property. It argue[d], however, that it owed no duty to [the decedent] withrespect to the cable fence because it did not install or maintain the fence, and the fence was not otherwise related to its use of the property, citing Cody F. v. Falletti,92 Cal.App.4th 1232, 112 Cal.Rptr.2d 593 (Ct.App. 2001)." Clark,92 P.3d, at 879. Falletti noted:
 The owner of an easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose, such as a driveway, a drainage ditch or even a pipeline.". . . The easement owner has no possessory right in the land beyond the limited use of the land granted by the easement. The nature of the duty owed by the owner of an interest in real property must have a relationship to the degree of control conferred by the scope of the ownership interest itself. An easement interest does not necessarily translate into a tort duty.
Falletti, 112 Cal.Rpt.2d at 601 (citations omitted). Clark
concluded:
 We agree with the California court's analysis. An easement holder, by virtue of its limited interest in the land, has no duty to invitees on the servient estate for conditions on the land that bear no relationship to the easement holder's use. The duty owed by virtue of possession of an interest in land must be related to that interest. In other words, we agree that an easement holder has a duty to act reasonably under the circumstances in its use of the servient estate, but conclude that the duty does not extend beyond the scope of that use.
Clark, 92 P.3d at 879-80 (citations omitted).
¶ 8 The position of the irrigation district in Clark is very similar to the position of Conservation Districts in the situation at issue here, and the analysis in Clark discusses a concept of control similar to that discussed favorably by Oklahoma courts. Accordingly, though not binding, the reasoning in the case is instructive. Under the above analysis, a Conservation District does face potential liability to a camper injured while swimming, boating or engaging in other activities on a watershed site. However, the extent of any such liability would depend on the camper's status as an invitee, licensee or trespasser, would be subject to the GTCA and all of its exemptions and limitations, and would be subject to the degree of control over the watershed site conferred by the scope of the easement granted to the Conservation District. The status of any particular camper, possible exemptions and limitations to a Conservation District's liability under the GTCA, and the scope of the easement granted to the Conservation District all involve fact questions, which cannot be answered by an Attorney General's Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 9 Individual District Directors would enjoy qualified immunity that "shields public officials from suit insofar as the official's conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." Hoerman v. Western Heights Bd. of Educ.,913 P.2d 684, 692 (Okla.Ct.App. 1995); see also Nevada v.Hicks, 533 U.S. 353, 400 (2001) (explaining that qualified immunity is "designed to protect state and federal officials from civil liability for conduct that was within the scope of their duties or conduct that did not violate clearly established law"). Although qualified immunity is a question of law, it includes subordinate questions of fact regarding whether the official's conduct is within the scope of his or her duties and whether there is a deprivation of the plaintiff's clearly established statutory or constitutional rights that, at this point, are speculative and not answerable in an Attorney General's Opinion.See, e.g., Rooks v. State ex rel. Okla. Corp. Comm'n,842 P.2d 773, 776 (Okla.Ct.App. 1992); 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 10 It is, therefore, the Official Opinion of the AttorneyGeneral that:
 1. A County Conservation District faces potential liability to a camper injured while swimming, boating or engaging in other activities on a watershed site. However, the extent of any such liability would depend on the camper's status as an invitee, licensee or trespasser, would be subject to Oklahoma's Governmental Tort Claims Act and all of its exemptions and limitations, and would be subject to the degree of control over the site conferred by the scope of the easement granted to the Conservation District. 51 O.S. Supp. 2004, § 152(8)(h). The status of any particular camper, possible exemptions and limitations to a Conservation District's liability under the Oklahoma's Governmental Tort Claims Act, and the scope of the easement granted to the Conservation District all involve fact questions which cannot be answered by an Attorney General's Opinion. See 74 O.S. 2001, § 18b(A)(5).
 2. Individual District Directors would enjoy qualified immunity that "shields public officials from suit insofar as the official's conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." Hoerman v. Western Heights Bd. of Educ., 913 P.2d 684, 692 (Okla.Ct.App. 1995).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JOANN T. STEVENSON Assistant Attorney General