NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CRAIG and MARSHA SMITH, husband and wife,
*Plaintiffs/Appellants*,

*v.*

ALMIDA LAND & CATTLE COMPANY, LLC, an Arizona limited
liability company, *Defendant/Appellee*.

No. 1 CA-CV 13-0757

FILED 3-3-2015

Appeal from the Superior Court in Yavapai County
No.  P1300CV201000476
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, PC, Flagstaff
By Chad Joshua Winger
*Counsel for Plaintiffs/Appellants*

Lewis Brisbois Bisgaard & Smith, LLP, Phoenix
By Matthew D. Kleifield, Robert C. Ashley
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

**D O W N I E**, Judge:

¶1 Craig and Marsha Smith appeal from the superior court's grant of summary judgment to Almida Land & Cattle Company, LLC ("Almida"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2 In 2000, the United States Forest Service ("USFS") issued a term grazing permit ("the Permit") to Almida for land located in the Prescott National Forest ("PNF"). The Permit authorized Almida to graze cattle on a portion of the PNF known as the West Bear/Del Rio Allotment ("the Allotment"). The Permit incorporated an Allotment Management Plan ("the Plan") that further defined obligations of Almida and the USFS, including the construction and maintenance of fences.

¶3 On March 28, 2008, Craig Smith and a companion were riding motorcycles in the PNF. The two men encountered construction work being performed by Transwestern Pipeline Company, so they deviated from their intended route onto "a road unfamiliar to Craig Smith [that] appeared to be the natural detour." Soon thereafter, Smith collided with an uncharged electric fence Almida erected in 2003, as dictated by the Plan.

¶4 The Smiths sued Almida and Transwestern for negligence.[2] They later dismissed Transwestern as a defendant. Almida moved for summary judgment, arguing it owed no legal duty to the Smiths. After briefing and oral argument, the superior court agreed, granting Almida's

---

[1] In reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party. *Portonova v. Wilkinson*, 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981).

[2] The Smiths sued the United States in federal court.

motion. The Smiths timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**DISCUSSION**

¶5 Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *see also Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 114-15, ¶¶ 12-14, 180 P.3d 977, 979-80 (App. 2008). We review the grant of summary judgment *de novo. Winsor v. Glasswerks Phx, LLC*, 204 Ariz. 303, 306, ¶ 6, 63 P.3d 1040, 1043 (App. 2003). We will affirm the superior court's decision if it is correct for any reason. *Ariz. Bd. of Regents v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager Adm'r*, 160 Ariz. 150, 154, 771 P.2d 880, 884 (App. 1989).

¶6 "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.* at ¶ 11. "Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.* at ¶ 10.

I. **Premises Liability Duties**

¶7 The Smiths allege Almida "breached its duty to Craig Smith because they created the dangerous condition, the Fence, that cause[d] Craig Smith's accident and injuries, and the dangerous condition existed for a sufficient length of time that the Defendants, in the exercise of reasonable care, should have discovered it and either warned of the danger or remedied it." Arizona courts follow the Restatement (Second) of Torts in assessing the duties owed to entrants onto property. *See Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142-43, 639 P.2d 330, 332-33 (1982); *Hicks v. Superstition Mountain Post No. 9399*, 123 Ariz. 518, 520, 601 P.2d 281, 283 (1979); *Wilcox v. Waldman,* 154 Ariz. 532, 536, 744 P.2d 444, 448 (App. 1987) (Arizona courts generally follow Restatement unless rules, statutes, or caselaw have adopted contrary positions).

¶8 Although the parties dispute whether Craig Smith was an invitee or a trespasser, consistent with summary judgment standards, we

assume, without deciding, that he was an invitee to the premises where the accident occurred. *See Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990) (courts view evidence and reasonable inferences therefrom in light most favorable to party opposing summary judgment). The common law imposes an affirmative duty on owners or possessors of land to make premises reasonably safe for invitees' use. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985), *superseded on other grounds by* A.R.S. § 33-1551.

¶9        The Smiths concede in their reply brief that "the fence is, undeniably a permanent improvement." By operation of law, the United States became the owner of that fence after it was erected. *See* 36 C.F.R. §§ 222.9(b)(2) ("Title to permanent structural range improvements shall rest in the United States."); 222.1(b)(21)(ii)(A) (permanent structural range improvements include fences).

¶10        Although Almida neither owns nor leases the Allotment, it may nevertheless owe premises liability duties if it qualifies as a possessor of land. The Restatement (Second) defines a possessor of land as:

> (a) a person who is in occupation of the land with intent to control it or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E (1965); *see also Tostado v. City of Lake Havasu*, 220 Ariz. 195, 201, ¶ 28, 204 P.3d 1044, 1050 (App. 2008) (adopting § 328E(a) definition of "possessor of land").[3]

---

[3]        The Restatement (Third) of Torts modifies the standard, defining "possessor of land," in pertinent part, as "a person who occupies the land and controls it." Restatement (Third) of Torts: Physical & Emotional Harm § 49(a) (2012). As the comments to that section note, this standard relies on the *fact* of control, rather than the *intent* to control. § 49 cmt a. A person "is in control of the land if that person has the authority and ability to take precautions to reduce the risk of harm to entrants on the land,

¶11 To determine whether Almida was "in occupation of the land with intent to control it," Restatement (Second) Torts § 328E(a), we first examine the nature of USFS grazing permits. 16 U.S.C. § 580*l* states:

> The Secretary of Agriculture in regulating grazing on the national forests and other lands administered by him in connection therewith is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof. *Provided*, That nothing herein shall be construed as limiting or restricting any right, title, or interest of the United States in any land or resources.

¶12 As the Arizona Supreme Court long ago observed, grazing permits "are only privileges, to be conferred or refused as the forest service may determine." *Atkins v. Hooker*, 56 Ariz. 197, 202, 106 P.2d 485, 486 (1940); *see also Tidwell v. State*, 21 Ariz. App. 3, 5, 514 P.2d 1260, 1262 (1973) (USFS grazing permit is "a mere license" that grants "no interest in the forest land except to . . . graze a certain number of cattle thereon."). Grazing permits "convey no right, title, or interest held by the United States in any lands or resources." 36 C.F.R. § 222.3(b). The USFS may cancel, modify, or suspend grazing permits for a variety of reasons, including a decision to devote the land "to another public purpose" and based on "resource condition[s]." 36 C.F.R. § 222.4(a)(1), (8).

¶13 The Smiths rely heavily on *Clark v. New Magma Irrigation & Drainage Dist.*, 208 Ariz. 246, 92 P.3d 876 (App. 2004), to support their assertion that Almida owed them premises liability duties. In *Clark*, the defendant drainage district ("District") was authorized to use a right-of-way easement over a portion of the Smithlings' property to access an irrigation canal. *Id.* at 247, ¶ 2, 92 P.3d at 877. Because third parties were using the right-of-way without authorization, the Smithlings erected a wire fence. *Id.* at ¶ 4. Justin Clark was killed when he rode his motorcycle into the fence. *Id.* at 248, ¶ 5, 92 P.3d at 878. In the ensuing wrongful death action, the trial court granted summary judgment to the District, and Clark appealed. *Id.* This Court affirmed. *Id.* at 251, ¶ 24, 92 P.3d at 881. We assumed Justin was an invitee and concluded the easement gave the District a non-possessory interest in the land. *Id.* at 249, ¶¶ 10, 12, 92

---

which is the reason for imposing the duties contained in this Chapter on land possessors." § 49 cmt c.

P.3d at 879. We nonetheless concluded the District owed no legal duty to Justin, stating:

> The easement owner has no possessory right in the land beyond the limited use of the land granted by the easement. *The nature of the duty owed by the owner of an interest in real property must have a relationship to the degree of control conferred by the scope of the ownership interest itself.* An easement interest does not necessarily translate into a tort duty.

*Id*. at ¶ 13 (emphasis added).

**¶14**        We disagree with the Smiths' suggestion that Almida's grazing permit is the functional equivalent of an easement in terms of the property interest conveyed.[4] But even if it were, *Clark* dictates against imposition of a duty under the undisputed facts of this case. Pursuant to *Clark*, in determining the existence of a duty, we look to the "degree of control conferred by the scope" of the property interest at issue. *Id*.; *see also Williams v. Sebert Landscape Co.*, 946 N.E.2d 971, 974 (Ill. App. 2011) ("The concept of 'control' is closely tied with the ability to exclude people from the use of a piece of property or to direct how that property is to be used."); *Harris v. Traini*, 759 N.E.2d 215, 225 (Ind. App. 2001) ("Only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to

---

[4]        Easements and grazing permits differ in material respects. Most fundamentally, an easement is a servitude, whereas a grazing permit is not. *See* Restatement (Third) of Property (Servitudes) § 1.1(1) (2000) ("A servitude is a legal device that creates a right or an obligation that runs with land or an interest in land."). Additionally, easement owners enjoy protection from interference by third parties, Restatement (First) of Property § 450(b) (1944), and land owners may not "interfere with the uses authorized" by an easement.        Restatement (Third) of Property (Servitudes) § 1.2(1). According to the Smiths, the Allotment is "open to the public for recreational use," and Almida is "subject to the will of the possessor of the land," Restatement (First) of Property § 450(c), in myriad respects. *Cf. Robinson v. Legro*, 325 P.3d 1053, 1059, ¶ 27 (Colo. 2014) (Hobbs, J., concurring) ("A grazing permit confers a revocable, non-exclusive license to access the federal lands for a limited purpose (here, grazing), subject to numerous terms and conditions; it does not confer a property interest entitling permit holders to exclude others.").

prevent others from coming onto it."). Although degree of control is often a question of fact, *Tostado*, 220 Ariz. at 201, ¶ 28, 204 P.3d at 1050, the facts bearing on Almida's control were undisputed in the superior court.

**¶15** Almida cannot make any structural or nonstructural improvements on the Allotment without USFS permission. *See* 36 C.F.R. § 222.9(b)(1). And in assessing control over the injury-causing instrumentality, it is of paramount importance that Almida was *required* to erect the fence at issue in these proceedings, as noted *supra*, ¶ 3. The Smiths have not alleged that Almida constructed the fence in violation of USFS specifications.

**¶16** The Permit dictated fence maintenance standards such as removing abandoned fence wire and steel posts, splicing broken wire, proper wire spacing and tension, replacement of broken or rotten posts, and maintenance of brace posts. The Smiths have not alleged that Almida violated any of these standards. It is also significant in assessing the degree of control that Almida had no authority to limit public access to the property and that the USFS denied Almida's post-March 2008 request for permission to install a gate at the site of Craig Smith's accident.

**¶17** Under the undisputed facts of this case, Almida lacked intended control (Restatement (Second)) or actual control (Restatement (Third)) sufficient to give rise to a duty to Craig Smith. We emphasize that our decision is based on the facts and arguments presented in this case and should not be read as a blanket pronouncement that grazing permittees *never* owe premises liability duties. Based on the facts and arguments before it, the superior court properly granted summary judgment to Almida.

## II.      Duty Arising from Relationship of the Parties

**¶18** A legal duty "may arise from a special relationship based on contract, family relations, or conduct undertaken by the defendant, or may be based on categorical relationships recognized by the common law, such as landowner-invitee." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 12, 275 P.3d 632, 635 (App. 2012). Courts, however, should not engage in a "fact-specific analysis of the relationship between the parties" in determining whether a duty of care exists because duty is a legal issue, not a question of fact. *Gipson*, 214 Ariz. at 145, ¶ 21, 150 P.3d at 232.

**¶19** The Smiths have identified no "special relationship" giving rise to a legal duty by Almida. Recognized "special relationships" include a parent's duty to control a child, a master's duty to control a servant, a

landowner's duty to control a licensee, and the duty of caretakers in charge of individuals with dangerous propensities to control those individuals. *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 473, ¶ 10, 323 P.3d 753, 756 (App. 2014); *see also Markowitz*, 146 Ariz. at 355, 706 P.2d at 367 (owner or possessor of land/invitee); *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983) (tavern owner/patron), *superseded by statute*, A.R.S. § 4-311, *as recognized in Booth v. State*, 207 Ariz. 61, 69, ¶ 22, 83 P.3d 61, 69 (App. 2004); *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112, 952 P.2d 754, 756 (App. 1997) (school/student). Almida and the Smiths have none of these relationships.

### III.        Duty Premised on Public Policy

**¶20**        Finally, even in the absence of a special relationship, "[p]ublic policy may support the recognition of a duty of care." *Gipson*, 214 Ariz. at 145, ¶ 23, 150 P.3d at 232. Arizona courts have recognized duties premised on public policy arising from statutes and the common law. *See id.* at 146, ¶ 26, 150 P.3d at 233; *Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 340, ¶ 20, 230 P.3d 718, 723 (App. 2010); *but see Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 160, ¶ 15, 318 P.3d 871, 876 (App. 2014) (rejecting Arizona Department of Transportation guidelines as basis for tort duty).

**¶21**        As they did in the superior court, without elaboration or argument, the Smiths cite 36 C.F.R. § 261.12(d), which prohibits "[b]locking, restricting, or otherwise interfering with the use of a road, trail, or gate." The Smiths have not explained the applicability of this regulation or established that it was designed to protect recreational users like Craig Smith. *See Gipson*, 214 Ariz. at 146, ¶ 25, 150 P.3d at 233 (criminal statute gives rise to tort duty only if it "is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation"). In their reply brief, the Smiths do not controvert the answering brief's analysis of 36 C.F.R. § 261.12 or discuss Almida's contention that the regulation has "nothing to do with the pasture fences erected by the holder of a grazing permit." Based on their briefing, the Smiths have not properly presented this argument on appeal, and we do not address it. *See State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9, 94 P.3d 1119, 1147 n.9 (2004) ("Merely mentioning an argument is not enough."); *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 304 n.7, 197 P.3d 758, 765 n.7 (App. 2008) (declining to address argument in appellate brief lacking analysis); *Ace Auto. Products, Inc. v. Van Duyne*, 156 Ariz. 140, 143, 750 P.2d

898, 901 (App. 1987) (appellate court has no duty to develop a party's argument).

**CONCLUSION**

**¶22** For the reasons stated, we affirm the superior court's grant of summary judgment to Almida. We award Almida its taxable costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED : ama